UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| ALVIN MOORE, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 2:16 CV 66 (JMB) |
| GREGORY NIFFEN and JOHN HEINRICH, | ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the defendants' motion for summary judgment. Plaintiff, who proceeds pro se, has not filed a response in opposition or requested an extension of time to do so. All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

Plaintiff Alvin Moore is an inmate incarcerated by the Missouri Department of Corrections. He alleges that, on December 9, 2013, defendant corrections officers Gregory Niffen and John Heinrich used excessive force against him after he refused an order to present his hands so they could remove his handcuffs. He claims that the defendants' actions damaged his sciatic nerve and aggravated an existing back injury and that he now suffers chronic pain. He brings this action pursuant to 42 U.S.C. § 1983.

**I.      Background**

On December 9, 2013, corrections officers came to plaintiff's cell to take his cellmate, Lonzo Wilkes, to a meeting. Plaintiff declared Wilkes an enemy and asked for protective custody. In accordance with standard procedures, plaintiff and Wilkes were both placed in

handcuffs for the duration of Wilkes's absence from the cell. When Wilkes was returned to the cell, plaintiff reiterated his request for protective custody. Instead of removing plaintiff from the cell for reassignment, the officers demanded he present his hands so his handcuffs could be removed. Knowing that he could not be removed from the cell unless he were handcuffed, plaintiff refused. Defendants Heinrich and Niffen reported to the cell in response to a call that plaintiff was refusing to "uncuff." They removed plaintiff from the cell and escorted him downstairs where he was secured to a restraint bench to await assignment to another cell.

Plaintiff alleges that defendants used excessive force at two separate stages of their encounter with him: when they entered the cell and when they secured him to the restraint bench. Plaintiff testified that he and Wilkes were both in handcuffs with their hands behind their backs when defendants entered the cell. Deposition [Doc. # 57-2 at 83].[1] Plaintiff was standing near the threshold of the cell, with his back to the doorway, talking over his shoulder to officers outside the door. Id. at 90-93. Defendant Heinrich ordered plaintiff to uncuff and, in response, plaintiff said that Wilkes was his enemy and he, plaintiff, could not be forced to remain in the cell with him. Id. According to plaintiff, Heinrich grabbed him by the arm and pulled him out of the cell and Niffen hit him with his body and threw or pushed him against the door frame and wall. Id. at 90, 92, 95-96. Plaintiff struck the wall and door frame with his face and chest. Id. Defendants then removed plaintiff from the cell and escorted him to the restraint bench. Plaintiff testified that defendant Heinrich forced him onto the bench by the handcuffs and "jumped on" him and pushed him with his body. Id. at 98-99, 58-59. He testified that the herniated disc in his back caused him pain and he began screaming that it hurt. "When I did that, it made like a reflex

---

[1] Materials in the record are cited with the CM/ECF document number and the page number that appears in the red header.

and I was like augh. That's when I got hit." Id. at 97-98. Defendants concede that plaintiff was in "severe pain" while he was seated on the restraint bench. [Doc. # 56 at 10].

The Court has reviewed a video recording that begins after plaintiff was removed from his cell. The recording shows defendants escorting plaintiff down a flight of steps and to the restraint bench. Because the camera is placed at the top of the steps, the restraint bench is viewed from high above and at a distance. The recording does not have an audio track and thus there is no information regarding the contents or tone of any speech. The video shows that plaintiff and the two defendants descended the stairs without incident. Plaintiff is wearing what he testified was a lumbar brace but is moving without difficulty. Once the three men arrived at the bench, defendant Niffen went behind it while holding plaintiff by one arm. Defendant Heinrich appears to be using both of his hands to hold plaintiff's hands or the cuffs. As defendants lowered plaintiff to the bench, several things happened: plaintiff twisted to his left; defendant Heinrich leaned on plaintiff from the right side, placing his forearm on plaintiff's head and pushing his head toward his knees; and defendant Niffen, possibly pulled off balance, kicked one foot out behind him. Ex. E at 10:12:20 – 10:12:35. Defendants then helped plaintiff sit upright and finished restraining him to the bench. Plaintiff began rocking back and forth, which he continued to do sporadically for the time he remained on the bench. More corrections officers responded to the area and a nurse came and appeared to check plaintiff's vital signs. Defendants Heinrich and Niffen released plaintiff from the bench and he was helped to his feet. Ex. F at 10:22 – 10:23. He appeared to stagger and required support. He was bent forward as defendants escorted him back up the stairs.

Additional facts will be discussed as necessary to address defendants' arguments.

3

## II. Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56, a party moving for summary judgment bears the burden of demonstrating that no genuine issue exists as to any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Once the moving party discharges this burden, the non-moving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Anderson, 477 U.S. at 247. The non-moving party may not rest upon mere allegations or denials in the pleadings. Id. at 256. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Id. at 248. The Court must construe all facts and evidence in the light most favorable to the non-movant, must refrain from making credibility determinations and weighing the evidence, and must draw all legitimate inferences in favor of the non-movant. Id. at 255.

## III. Discussion

### A. The State of the Record

The Court begins by addressing two features of the record before it on summary judgment. First, while defendants have submitted plaintiff's deposition, the testimony they submit on their own behalf is quite thin, consisting solely of an affidavit from defendant Niffen.[2] Niffen's affidavit sets forth six paragraphs, in which he states that: (1) he was a corrections

---

[2] In addition to plaintiff's deposition and Niffen's affidavit, defendants submitted plaintiff's first amended complaint; his grievance over medical care for back pain; his medical records; Department of Corrections procedures on mechanical restraints, use of force, and administrative segregation; and a video recording.

officer on the day these events took place, (2) plaintiff refused an order to put his hands through the chuck hole of his cell so that he and Heinrich could safely uncuff him, (3) refusal to comply with an order is a safety and security threat, (4) plaintiff wanted to be removed from his cell, so defendants walked him downstairs to take him to the restraint bench, (5) Niffen walked plaintiff to the restraint bench to wait for a cell assignment, and (6) defendants "backed plaintiff up to the bench with the intention of pulling [him] down by his forearm per policy and then securing his ankles to another set of restraints per policy." [Doc. # 57-4]. The affidavit does not address any of the events that occurred after defendants "backed plaintiff up to the bench." There is no testimony in any form from defendant Heinrich.

Second, plaintiff has not filed a response in opposition to the defendants' motion and, as a consequence, he is deemed to have admitted the facts they set forth in their Statement of Uncontroverted Material Facts (SUMF). [Doc. # 57]. See E.D. Mo. L.R. 4.01(E) ("All matters set for in the statement of [uncontroverted facts] shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party."). As relevant to the discussion here, the following facts are established. First, on December 9, 2013, plaintiff had a history of sciatic pain and a herniated disc. SUMF at ¶¶ 5-10. Second, repeated refusal to comply with a direct order is an immediate and dangerous security threat for which officers may use non-deadly force. SUMF at ¶ 35 (citing Use of Force Guidelines and Reports [Doc. # 59-1]).

Other assertions in defendants' statement of facts are not wholly supported by the evidence that they cite. For example, defendants state that they entered plaintiff's cell in order to forcibly remove him. SUMF at ¶ 36. In the portion of deposition testimony defendants cite as support, however, plaintiff specifically disavows any knowledge about defendants' intent: "Q: So were they trying to pull you out of the cell or push you into the cell? A: I don't really know

5

what they were trying to do. The only thing I knew is that they [were] using excessive force that wasn't even warranted." [Doc. # 57-2 at 94]. Indeed, plaintiff testified, and Niffen's affidavit supports, that defendants wanted to remove his handcuffs, after which neither plaintiff nor Wilkes could be transported from the cell. See Doc. # 57-2 at 86 ("To separate us they would have to remove one of us from that area handcuffed."). Thus, the most that can be determined is that defendants entered the cell in response to plaintiff's repeated refusal to comply with the order to uncuff.

Defendants also assert that "[p]laintiff was neither pushed nor shoved onto the bench." SUMF at ¶ 41. In support of this fact, they cite (1) plaintiff's amended complaint, (2) his deposition testimony, and (3) the video described above. In the cited portion of plaintiff's amended complaint, plaintiff alleges that defendants "slammed [him] very hard upon [the] metal bench . . . The slamming . . . caused damage to the disc and [sciatic] nerve in [plaintiff's] lower back." [Doc. # 8 at 6]. This allegation directly refutes defendants' assertion in paragraph 41.

The cited portion of plaintiff's deposition is more ambiguous. He testified first that he was "essentially forced down" onto the bench and, "[l]ike, I was sitting and kind of felt a little boom because they have to get the cuff and they handcuffed me to the bench. It was like boom." Defense counsel then asked, "So it looks like what you're acting out is you were like lowered down and then shoved on the bench?" Plaintiff answered, "Yes." [Doc. # 57-2 at 97]. But, immediately after, he was asked whether he "felt a hand shove" him, and he answered, "No. What happened was that the nerve that caused that hernia, . . . I was screaming and letting them know it was hurting. I was in pain. When I did that, it made like a reflex and I was like augh. That's when I got hit. Just like that." Id. at 97-98. Plaintiff next testified that "there was never a push. It was like with the handcuff. He got the handcuffs." A little later, he states Sergeant

6

Heinrich "is the one that got my arm with the handcuffs on." Id. at 99. Defense counsel asked, "you're saying . . . nobody pushed you or shoved you onto the bench [but] you were pulled down by your handcuffs?" Plaintiff responded, "Absolutely." Id. at 99. Counsel then asked, "And then you screamed from being pulled onto the bench?" Plaintiff answered, "Yeah. I started screaming when he applied that pressure and he put his forearm on my face." A little further on, he testified, "That is when the sergeant [Heinrich] came over the top with his right forearm in my face and you can see it all in the video." Id. at 100. Giving this testimony the benefit of liberal construction, and drawing all inferences in favor of plaintiff as the nonmoving party, the Court understands petitioner's testimony to be that defendant Heinrich used the handcuffs to forcibly pull plaintiff down onto the bench, plaintiff experienced pain and started to scream and twist, and defendant Heinrich put his forearm on plaintiff. Plaintiff testified elsewhere that Heinrich also used his right leg to apply pressure while he pushed plaintiff's head down with his entire body. Id. at 59. Plaintiff disputed any suggestion that Heinrich accidentally fell on him, citing the video as support. Id. at 65 (Heinrich "fell with cause and wanted to cause damage."). Thus, plaintiff's testimony supports the statement in paragraph 41 that plaintiff was neither "pushed nor shoved" onto the bench. However, his testimony that Heinrich forcibly pulled him onto the bench by the handcuffs and then "fell" on him "with cause" remains unrefuted because the video recording does not show the parties' hands and defendant Heinrich has not provided any testimony.

With these matters in mind, the Court turns to defendants' arguments that they are entitled to summary judgment on plaintiff's excessive force claims.[3]

---

[3] Defendants also seek summary judgment on official capacity claims. See Egerdahl v. Hibbing Community College, 72 F.3d 615, 619 (8th Cir. 1995) (where complaint is silent about capacity in which the plaintiff is suing the defendant, courts must interpret complaint as including only official-capacity claims); Baker v. Chisom, 501 F.3d 920, 923, 925 (8th Cir. 2007) (official capacity claims against state

## B. Qualified Immunity

Defendants assert that they are entitled to qualified immunity. Qualified immunity shields government officials from liability in a § 1983 action unless their conduct violates a clearly established right of which a reasonable official would have known. Burnikel v. Fong, 886 F.3d 706, 709 (8th Cir. 2018) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To resolve a government official's claim of qualified immunity, courts apply a two-part test, asking whether the plaintiff has demonstrated a violation of a constitutional right and whether that constitutional right was clearly established at the time of the violation. Williams v. Jackson, 600 F.3d 1007, 1012 (8th Cir. 2010) (citing Harlow, 457 U.S. at 818). These questions may be addressed in either order. Id. (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)). In cases involving more than one government official, as here, qualified immunity requires that each official's conduct be considered individually, "because a person may be held personally liable for a constitutional violation only if his *own* conduct violated a clearly established constitutional right." Burnikel, 886 F.3d at 709-10 (quoting Manning v. Cotton, 862 F.3d 663, 668 (8th Cir. 2017) (internal quotation and citation omitted). Finally, "when an official's intent is an element of the § 1983 claim, as it is in Eighth Amendment excessive force claims, and if the official has made a properly supported motion for summary judgment based on qualified immunity, the plaintiff 'must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive.'" Burns v. Eaton, 752 F.3d 1136, 1139 (8th Cir. 2014) (quoting Crawford–El v. Britton, 523 U.S. 574, 600 (1998)).

---

officials are barred by Eleventh Amendment immunity). On November 1, 2016, plaintiff supplemented his complaint to state that he named defendants in their individual capacities. See Docs. # 10, # 11, # 13. Thus, defendants' motion is moot on this point.

"To prove an Eighth Amendment violation, a prisoner must satisfy two requirements, one objective and one subjective." Irving v. Dormire, 519 F.3d 441, 446 (8th Cir. 2008). The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious. In excessive force cases, "guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically." Id. (citing Hudson v. McMillian, 503 U.S. 1, 9 (1992)). Even with such motivation, not every push or shove violates the Constitution, but any use of force greater than *de minimis,* or any use of force that is "repugnant to the conscience of mankind," does. Id. "The second requirement is subjective and requires that the inmate prove that the prison officials had a sufficiently culpable state of mind." Id. (internal quotation and citations omitted). In excessive force claims, the subjective inquiry is whether the force was used "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Id. (internal quotations and citations omitted). The unnecessary and wanton infliction of pain can constitute an Eighth Amendment violation. Whitley v. Albers, 475 U.S. 312, 320 (1986). Although an unforeseeable accident may produce added anguish, it cannot on that basis alone amount to malicious and sadistic intent to cause harm. Estelle v. Gamble, 429 U.S. 97, 105 (1976); see also Redmond v. Crowther, 882 F.3d 927, 937 (10th Cir. 2018) ("[A]ccidentally deploying force is antithetical to deploying that force maliciously or sadistically."); Campbell v. Grammer, 889 F.2d 797, 802 (8th Cir. 1989) (distinguishing between "misunderstanding, inexperience, oversight, inadvertence, and fecklessness" and wantonness).

The extent of an inmate's injury, "while material to the question of damages and informative as to the likely degree of force applied, is not in and of itself a threshold requirement for proving this type of Eighth Amendment claim." Williams v. Jackson, 600 F.3d 1007, 1012

(8th Cir. 2010). This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam). The extent of an inmate's injury may provide some indication of how much force was applied or whether the use of force could plausibly have been thought necessary in a particular situation. Id. (internal quotation and citations omitted). But, an inmate who complains of a "push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." Id. at 39. (internal quotation and citations omitted).

The Court concludes that defendants are entitled to summary judgment with respect to their actions in the cell. Plaintiff concedes that he refused an order to present his hands to have the handcuffs removed. Because corrections officers may use force in a good faith effort to maintain discipline, Johnson v. Blaukat, 453 F.3d 1108, 1113 (8th Cir. 2006), "[t]his is not a case where a complete absence of penological purpose raised the reasonable inference that [defendants] acted maliciously in an effort to cause harm." Jackson v. Gutzmer, 866 F.3d 969, 977 (8th Cir. 2017) (citation omitted). Furthermore, there is no evidence that the amount of force used was more than was necessary in the circumstances. Indeed, plaintiff neither alleged nor testified that he sustained any injury whatsoever as a result of their conduct toward him in the cell. Thus, defendants are entitled to summary judgment on plaintiff's claims arising from their conduct in the cell.

With respect to plaintiff's claim that he was subjected to excessive force when being seated on the restraint bench, defendants concede that plaintiff was in severe pain and may have been injured as a result of the force they applied. Nonetheless, they contend that plaintiff has not put forward any evidence that they used more than de minimis force or acted with malicious or sadistic intent. The Court agrees with respect to defendant Niffen: plaintiff did not testify that

Niffen used excessive force or acted with any improper intent and so the motion for summary judgment will be granted with respect to defendant Niffen. Plaintiff did testify that defendant Heinrich used excessive force and did so "with cause." Arguably, "with cause" is not a sufficient basis to find the requisite intent, but in the absence of any testimony whatsoever from defendant Heinrich with respect to his conduct and intent, the Court cannot say that his claim fails as a matter of law. Defendant has not made "a properly supported motion for summary judgment" and thus has not established that he is entitled to qualified immunity as a matter of law. See Burns, 752 F.3d at 1139. Because plaintiff did not oppose defendants' motion, however, the Court believes it is appropriate to open the record for a period of time in order to allow defendant Heinrich to provide additional evidence. In the event that defendant Heinrich chooses not to do so, , the Court will set this matter for trial.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [Doc. # 55] is **granted in part** with respect to defendant Gregory Niffen. Summary judgment in favor of defendant Niffen will be entered at the conclusion of the case.

**IT IS FURTHER ORDERED** that, not later than **September 24, 2018**, defendant Heinrich shall file either additional evidence in support of his motion for summary judgment or a notice that this matter can be set for trial.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of August, 2018.